IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| S.B.T, <br><br>   Plaintiff, <br><br> v. <br><br> KAREN D. MILLER, Child Protection Investigator, DCFS, in her individual capacity; MISTY D. HUFF, Child Protection Investigator, DCFS, in her individual capacity; DIANE WOODS, Supervisor, DCFS, in her individual capacity; ALEXIS CARLISLE, DCFS Area Administrator, in her individual capacity; CYNTHIA TATE , in her official capacity, as Acting Director of DCFS <br><br>   Defendants. | No. 3:15-cv-162 <br><br><br> JURY DEMAND |

## COMPLAINT

### INTRODUCTION

    On March 22, 2013, Plaintiff S.B.T. ("S.B.T.") was "indicated" for child neglect because she, herself, was a victim of domestic violence. As a result of Defendant DCFS employees' actions, S.B.T. lost her job as a child-welfare worker, tarnishing her professional reputation and impairing her ability to financially and emotionally support her two children. The decision to indicate S.B.T. occurred in violation of her rights to due process as guaranteed by the Fourteenth Amendment to the United States Constitution. S.B.T respectfully demands a trial by jury.

### NATURE OF ACTION

    1.    This is a civil rights complaint, brought pursuant to 42 U.S.C. § 1983, seeking redress for the actions of Defendants Karen D. Miller, Misty D. Huff, Diane Woods, and Alexis

- 2 -

Carlisle, who deprived S.B.T. of her liberty interest in pursuing her career, in violation of the due process clause of the Fourteenth Amendment to the United States Constitution. Declaratory relief is also sought against Acting Defendant DCFS Director Cynthia Tate insofar as the Director's office of DCFS maintained policies and practices of enforcing Allegation 60, a void policy, as well as the policy and practice of indicating domestic violence victims without considering exculpatory evidence.

2.     S.B.T. seeks compensatory damages, an award of attorneys' fees under 42 U.S.C. § 1988, and costs, pursuant to 28 U.S.C. § 1920, and any other relief the Court deems appropriate.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over S.B.T.'s claims pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343.

4.     Venue is proper in this district under 28 U.S.C. § 1391 because the Southern District of Illinois is the judicial district in which substantially all of the events or omissions giving rise to S.B.T.'s claims occurred and the Individual Defendants are found or employed in the Southern District of Illinois.

## THE PARTIES

5.     S.B.T. is a resident of Jefferson County, Illinois.

6.     S.B.T. is the mother of two children ages 14 and 3.

7.     S.B.T. is a certified Illinois child welfare specialist, and, at the time of the indicated finding, was employed at Lutheran Child and Family Services of Illinois ("LCFS"), a provider of child welfare services on contract with the Illinois Department of Children and Family Services.

8.     S.B.T. began work at LCFS on January 22, 2013 and received her certification as a child welfare specialist on March 5, 2013.

9.     Defendant Karen D. Miller, a DCFS investigator, is being sued in her individual

capacity. Upon information and belief Defendant Miller resides and works in the Southern District of Illinois.

10. Defendant Misty D. Huff, a DCFS investigator, is being sued in her individual capacity. Upon information and belief Defendant Huff resides and works in the Southern District of Illinois.

11. Defendant Diane Woods, Defendant Huff's supervisor at all times relevant to this Complaint, is being sued in her individual capacity. Upon information and belief Defendant Woods resides and works in the Southern District of Illinois.

12. Defendant Alexis Carlisle, an Area Administrator for DCFS, who at all relevant times had supervisory responsibility to Defendant Woods, is being sued in her individual capacity.

13. Defendant Cynthia Tate is the Acting Director of DCFS, a successor to Richard Calica, who was the Director of DCFS at the time of the actions herein. She is sued for declaratory relief in her official capacity.

## STATEMENT OF THE CASE

**DCFS NOTIFICATION AND INVESTIGATION PROCEDURES**

14. The Abused and Neglected Child Reporting Act ("Act") governs the mandatory reporting of child abuse and neglect in Illinois. *See* 325 ILCS 5/1 *et seq.*

15. DCFS maintains a 24-hour hotline number for reports of suspected child abuse or neglect. 89 Ill. Adm. Code § 300.30(a).

16. The Act requires that DCFS promptly initiate an investigation of the merits of hotline calls it accepts. 325 ILCS 5/7, 5/7.3, 5/7.4.

17. DCFS must provide pre-deprivation due process by conducting an initial investigation within 24 hours after the Department receives a report alleging child abuse. 89 Ill. Admin. Code § 300.100.

18. The investigator is required to contact the alleged perpetrator within seven days after assignment, and is also required to provide the alleged perpetrator with a written form, known as a Notification of a Report of Suspected Child Abuse and/or Neglect ("CANTS" Notice) notifying the individual that the incident is being investigated.

**REQUIRED EVIDENTIARY BASIS FOR INDICATION**

19. After completing an investigation, DCFS determines whether a report of abuse or neglect is "indicated," "unfounded," or "undetermined." 325 ILCS 5/7.12.

20. For a report to be indicated, DCFS must find credible evidence of the alleged abuse or neglect. *Dupuy v. McDonald*, 141 F. Supp. 2d 1090 (N.D. Ill. 2001)(declaratory ruling) and *Dupuy v. McDonald*, 2003 U.S. Dist. LEXIS 12019 (N.D. Ill. July 10, 2003)(preliminary injunction order), which was subsequently affirmed in relevant part by the U.S. Court of Appeals for the Seventh Circuit in *Dupuy v. Samuels*, 397 F.3d 493, 505-06 (7th Cir. 2005)("*Dupuy*").

21. Credible evidence of child abuse or neglect means that the available facts, when viewed in light of the surrounding circumstances, would cause a reasonable person to believe that a child was abused or neglected. *Dupuy*, 397 F.3d at 497.

22. The determination of credible evidence must include the full consideration of all available exculpatory evidence that the individual under investigation did *not* commit any abuse or neglect, and must also give this exculpatory evidence the same consideration as any incriminating evidence. *Id*. at 505-506.

23. If indicated, an individual is placed on the State Central Register, which is maintained by DCFS, and includes all cases of suspected abuse or neglect. Indicated findings of most types of neglect, including the allegation at issue herein, are registered for a period of 5 years. 325 ILCS 5/7.14.

**ALLEGATION 60**

24. For an individual to be subject to an investigation based on a hotline call, or ultimately indicated, the specific incident of harm alleged in the hotline report must be an "allegation" as defined by the Code. *See* 89 Ill. Adm. Code § 300, App'x B.

25. Despite legislative prohibition and the mandate of the Illinois Supreme Court, DCFS at all relevant times maintained a policy and practice of applying Allegation 10/60, entitled "Substantial Risk of Physical Injury / Environment Injurious to Health and Welfare," in investigating and indicating persons who are subject of hotline calls, including S.B.T.

26. In 1980, the Illinois legislature specifically removed the "environment injurious" language from the definition of "neglected child" found in the Act. Pub. Act 81-1077 (eff. July 1, 1980).

27. On December 22, 2011, the Illinois Appellate Court held that Allegation No. 10/60 as promulgated by DCFS via its own Rules and Procedures "impermissibly expanded upon the enabling statute by including language that the legislature purposely chose to remove" and declared the allegation to be "void *ab initio*." *Julie Q. v. Dep't of Children & Family Servs.*, 963 N.E.2d 401, 412 (Ill. App. Ct. 2011).

28. On March 21, 2013, the Illinois Supreme Court affirmed the Appellate Court's judgment and held that "Allegation 60 exceeds DCFS' scope of authority under the Act and it is void." *Julie Q. v. Dep't of Children and Family Servs.*, 995 N.E.2d 977, 986 (Ill. 2013).

**BACKGROUND**

29. On February 14, 2013, DCFS received an anonymous hotline call regarding S.B.T.'s ex-husband's alleged abuse and neglect of their son.

30. DCFS summarized the anonymous call as follows:

> [T]onight [S.B.T.'s ex-husband] was intoxicated and S.B.T. locked him out of the house. S.B.T. and her five-month old son were sleeping in the bedroom. [S.B.T.'s ex-husband] threw a brick through the window in the bedroom and it landed about a foot away from the mother and child.

31. The caller also stated that there is a history of domestic violence and/or drugs and alcohol at S.B.T.'s residence.

32. S.B.T. had been physically harmed by her ex-husband multiple times throughout their relationship.

33. Prior to February 14, 2013, there is one allegation of harm against the children by S.B.T.'s ex-husband. One evening, S.B.T.'s ex-husband arrived at the home in violation of the Judgment of Dissolution of Marriage. S.B.T. did not witness the incident, but saw a small scratch on her daughter's face that her ex-husband claimed was the result of their daughter falling off the porch and him catching her. When S.B.T. saw the scratch on her daughter's face, S.B.T. called the police and had her ex-husband removed from the home.

### INVESTIGATION

34. Defendant Huff noted on February 14, 2013 that "it appear[ed] S.B.T., mom, protected child by locking Broche out of the home and contacting 911," and that there were "no allegations to her."

35. Defendant Huff assigned Defendant Miller to investigate the call.

36. Defendant Miller first attempted to contact S.B.T. at her home on the afternoon of February 14, 2013. When no one was at S.B.T.'s home, Defendant Miller left her business card on the door.

37. On February 15, 2013, S.B.T. obtained an emergency Order of Protection against her ex-husband in Jefferson County.

38. On February 19, 2013 Defendant Miller observed both S.B.T.'s children at the

children's daycare facility. Both children were appropriately dressed and clean.

39. On March 4, 2013, S.B.T. gave Defendant Miller a copy of the February 15, 2013 emergency Order of Protection.

40. Defendant Miller noted that S.B.T.'s ex-husband remained out of the home, and the situation continued to appear safe.

41. On March 7, 2013, S.B.T. obtained a plenary Order of Protection against her ex-husband.

42. At some point in time between S.B.T.'s March 4, 2013 meeting with Defendant Miller and March 19, 2013, the investigation was transferred from Defendant Miller back to Defendant Huff.

43. Defendant Huff left a voice message for S.B.T. on March 19, 2013 inquiring about her ex-husband's whereabouts. S.B.T. called Defendant Huff and told her that her ex-husband was undergoing in-patient treatment at a psychiatric hospital.

44. S.B.T. also told Defendant Huff that she had dropped the Order of Protection against her ex-husband on March 15, 2013 because he did not constitute a threat in light of his hospitalization. S.B.T. never informed her ex-husband that she had dropped the Order of Protection.

45. Defendant Huff spoke with S.B.T.'s ex-husband on the phone on March 20, 2013. He stated that he did not intend to contact S.B.T. or his children, and he agreed to contact DCFS prior to making any contact with them.

**DCFS'S FAILURE TO FOLLOW INVESTIGATIVE PROCEDURES**

46. On March 22, 2013, Defendant Huff called S.B.T. and asked her to agree to contact DCFS prior to allowing her ex-husband to contact the children, other than supervised visitations;

S.B.T. agreed to contact DCFS before allowing her ex-husband near the children.

47. Later that day, S.B.T. met with Defendant Huff at the DCFS office. Defendant Huff gave S.B.T. a CANTS Notice indicating that she was being investigated under Allegation 60 for neglecting her children by causing an "environment injurious."

48. Huff provided this notice even though Allegation 60 had been declared void by the Appellate Court in 2011 and that ruling had been affirmed by the Illinois Supreme Court. The Director of DCFS, though responsible for carrying out the law as determined by the Appellate and Supreme Courts, authorized DCFS investigators and supervisors to continue to use Allegation 60 as if no judicial decision as to its validity had occurred.

49. At no point between February 14, 2013 and March 22, 2013 did Defendants provide S.B.T. with written notice or verbally inform her that she was the subject of their investigation.

50. Instead, S.B.T. believed her ex-husband was the only subject of the investigation, and that she herself was being interviewed by Defendants for that purpose.

51. Less than an hour after S.B.T. was put on notice that she was under investigation, Defendant Huff recommended S.B.T. be indicated to DCFS supervisor, Defendant Woods. During this period neither Defendant Huff nor Defendant Wood provided S.B.T. an opportunity to present exculpatory evidence, which they were required to consider pursuant to the *Dupuy* decision and the due process requirements upon which the Dupuy decision rests. *Dupuy*, 397 F. 3d 493.

52. Defendant Woods agreed with Defendant's Huff recommended indicated finding.

**DCFS'S FAILURE TO CONSIDER EXCULPATORY EVIDENCE**

53. Defendants failed to provide S.B.T. with the opportunity to provide DCFS with exculpatory evidence because she did not know she was the subject of the investigation and she was indicated within hours of discovering that she was being investigated.

54. For example, S.B.T. never had the opportunity to provide Defendants with the Judgment of Dissolution of Marriage that gave her discretion in allowing her ex-husband visitation prior to her indication. They also failed to consider that S.B.T. had enforced this Judgment in the past against her ex-husband.

55. Defendants Wood and Huff did not conduct the required contacts for completing their investigation and did not consider exculpatory evidence prior to making their recommendation.

56. Only after recommending the indicated finding against S.B.T. on March 22, 2012 did Defendant Huff attempt to reach required investigative contacts as well as collateral contacts provided by S.B.T.

57. On March 22, 2013, after recommending the indicated finding, Defendant Huff spoke with Dr. Elizabeth Cox, a primary care physician and a required investigative contact pursuant to DCFS policy. Dr. Cox provided the exculpatory information that S.B.T.'s daughter was healthy and up to date on her physical examinations.

58. On March 25, 2013, Defendant Huff contacted Dr. Marjorie Nwosu, a primary care physician. Dr. Nwosu provided the exculpatory information that S.B.T.'s son was healthy and up to date on his physical examinations.

59. After recommending the indicated finding, Defendant Huff called collateral contact Ron Boling on the phone. He provided exculpatory information.

60. After recommending the indicated finding, Defendant Huff called collateral contact

Ms. Stuckey. She provided exculpatory information.

61. After recommending the indicated finding, Defendant Huff also called Counselor, Sharon Reed of the Angela Center for Behavioral Health. She provided exculpatory evidence, including that S.B.T. regularly seeks counseling.

62. On March 25, 2013, Defendant Huff contacted S.B.T.'s ex-husband and informed him of the recommended indicated finding against him.

63. Defendant Huff told S.B.T.'s ex-husband during this conversation that the Order of Protection against him had been dropped even though S.B.T. had not so informed him and did not intend to inform him of that decision on her part.

64. S.B.T.'s ex-husband informed Defendant Huff that he planned to remain in the hospital seeking care and that he did not intend to reunite with S.B.T. or his children until "he can get himself together."

65. Defendants Huff and Woods failed to consider any of the exculpatory information they gathered between March 22 and April 4 and they proceeded with their recommendation that S.B.T. should be indicated as a perpetrator for child neglect, even though they were aware that this indication would affect her ability to work in the child welfare field.

66. An Administrator's Teleconference was held on April 4, 2013 by Area Administrator Alexis Carlisle. Defendant Administrator Carlisle recommended that S.B.T. be indicated. In recommending the indicated finding, Defendant Carlisle cited the alleged history of domestic violence in the home and faulted S.B.T.'s decision to allow the Order of Protection to lapse, without considering S.B.T.'s reasons for considering such Order to be unnecessary.

67. Defendants' recommendation was upheld by Defendant Carlisle despite evidence that S.B.T. called the police in response to each incident alleged, that S.B.T. had previously called

the police when her ex-husband violated their Judgment for Dissolution of Marriage, that the Judgment gave S.B.T. discretion over her ex-husband's visitation rights, that S.B.T., not her children, had been the victim in all of the alleged incidents of violence except one prior to 2013, that in responding to each of these incidents the police never determined her ex-husband endangered his children prior to February 14, 2013, and that S.B.T. at all times relevant to the Complaint sought counseling from Sharon Reed of the Angela Center for Behavior Health. The decision continued to ignore extensive exculpatory evidence S.B.T. made available to Defendants, including the basic exculpatory fact that S.B.T. was not at fault in the incident that preceded the hotline call; her husband, the domestic violence perpetrator, was the sole offender.

68. Defendant Huff called S.B.T. on April 5, 2013 to inform her that Defendant Carlisle upheld the recommendation of an indicated finding.

69. Following the indication against S.B.T. for child neglect, her name was immediately entered into the State Central Register as a perpetrator of child neglect.

70. By operation of law, absent a successful appeal, S.B.T.'s placement on the Register would continue for five years and would be used by any child welfare employer as a ground for preventing S.B.T. from working in any child care position during that time.

71. On April 21, 2013, S.B.T. met with her supervisors at LCFS and was informed that, because of the indicated finding against her, she would be unable to be alone with children pending the disposition of an administrative appeal, which posed a significant hardship for S.B.T. in her ability to do her job.

72. Upon notification of the indicated finding, S.B.T. filed an administrative appeal on May 7, 2013 and requested an expedited appeal as was her right as a child care worker.

73. On July 22, 2013, the Administrative Law Judge ("ALJ") issued his

Recommendation and Opinion. While the ALJ recommended that the indicated finding be affirmed, that recommendation was not based on any evidence gathered by Defendants during their investigation. Rather, the ALJ determined that because S.B.T. was allegedly denying and minimizing past incidents of domestic violence, S.B.T. placed her children in an injurious environment.

**DCFS'S RELIANCE ON VOID ALLEGATION**

74. In a letter dated July 24, 2013, Richard H. Calica, then director of DCFS, issued the final administrative decision and informed S.B.T. that he was adopting the ALJ's decision to indicate her under Allegation 60, and that S.B.T.'s request for expungement of her record from the State Central Register was denied. This decision was made even though it occurred months after the Illinois Supreme Court had affirmed that Allegation 60 was void as a matter of law.

75. Defendant Calica's final administrative decision based on Allegation 60 against S.B.T. caused her extreme emotional distress, including fear that she would be unable to continue working as a child welfare specialist.

76. Defendant Calica's final administrative decision based on Allegation 60 also prevented S.B.T. from volunteering at her children's school, and had a chilling effect on S.B.T.'s ability to pursue activities with her children while the finding remained on the register.

**REVERSAL OF FINAL ADMINISTRATIVE DECISION**

77. S.B.T. met with her supervisors at LCFS and provided them with a copy of the Director's decision.

78. Due to the indicated decision against her, S.B.T.'s employer fired her on August 1, 2013.

79. On August 16, 2013, S.B.T. filed a Pro Se Complaint for Administrative Review in

the Circuit Court of the Second Judicial Circuit (Jefferson County, IL).

80. S.B.T. subsequently amended her Complaint on August 20, 2013.

81. On December 9, 2013, S.B.T. filed her motion and memorandum of law in support of administrative review seeking to overturn DCFS's final administrative decision.

82. DCFS filed a response and S.B.T. subsequently filed a reply on January 21, 2014.

83. On February 6, 2014, the Circuit Judge found that the director's decision to indicate S.B.T. was against the manifest weight of the evidence and reversed the director's decision, thereby removing S.B.T. from the State Central Register.

84. On or about March 22, 2014, LCFS rehired S.B.T. as a child welfare caseworker.

85. Unable to secure employment during the more than seven months that her name was registered as an indicated perpetrator of child neglect on the State Central Register, S.B.T. was reinstated as a child welfare specialist with LCFS.

86. S.B.T.'s unemployment and loss of wages brought S.B.T. to the brink of bankruptcy, caused her to suffer and continue to suffer extreme anxiety and depression for which she is seeing a therapist, and caused immeasurable and irreparable damage to her professional reputation.

## CLAIMS FOR RELIEF
### COUNT I- §1983 CLAIM FOR DEPRIVATION OF DUE PROCESS RIGHTS

87. S.B.T. incorporates and restates each of the above paragraphs as if fully set forth herein.

88. All Defendants are sued for their actions under color of state law.

89. Defendants' Miller, Huff, Woods and Carlisle actions complained of herein violated S.B.T.'s protected liberty interests without due process of law, in violation of the Fourteenth Amendment of the United States Constitution. Both substantive and procedural due process

violations are alleged herein.

90. Defendants deprived S.B.T. of her federal constitutional rights to due process under the Fourteenth Amendment by failing to gather and consider plainly exculpatory evidence that any responsible child protection investigator or administrator in their position would consider.

91. Defendants Miller, Huff, Woods, and Carlisle also violated the due process rights of S.B.T. by using her status as a victim of domestic violence against her and using an invalid definition of "neglect" under the Act that unlawfully permitted DCFS investigative employees to treat a domestic violence victim like S.B.T. as a person who is at fault for the violence perpetrated by their intimate partners.

92. Defendants' actions caused severe and long-lasting harm and injury to S.B.T. S.B.T.'s right to continue her career as a child welfare specialist was seriously threatened without basis and without constitutionally required process. Defendants' actions proximately caused S.B.T. emotional and financial harm. S.B.T. is entitled to compensatory damages in an amount not less than $50,000 from each Defendant, jointly and severally.

93. Defendants' conduct caused the violation of S.B.T.'s constitutional right and each defendant sued for compensatory relief knew or should have known that their conduct violated the clearly established legal rights of S.B.T.

94. Defendants Miller, Huff, Woods, and Carlisle each acted intentionally or recklessly or with deliberate indifference to the consequences of their actions in recommending and in issuing an indicated finding against S.B.T.

**WHEREFORE**, S.B.T. requests this Court enter an order of judgment against Defendants providing the following relief:

        a.      Compensatory damages against Defendants Miller, Huff, Woods, and Carlisle in whatever amount in excess of $50,000, exclusive of costs and interests, to which S.B.T. is found to be entitled;

        b.      An award of interests, costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1920; and

        c.      Such other relief as this Court deems just and equitable.

### COUNT II– DECLARATION OF PLAINTIFF'S RIGHTS

95.    S.B.T. incorporates and restates each of the above paragraphs as if fully set forth herein.

96.    All Defendants are sued for their actions under color of state law.

97.    Defendants Miller, Huff, Woods, and Carlisle brought an indicated finding against S.B.T. under Allegation 60, an allegation that Defendants knew or should have known is void *ab inito*.

98.    Defendant Tate in her official capacity is responsible for the violation of law perpetrated by the DCFS Director in his or her official capacity. The DCFS Director violated S.B.T.'s right to be free of the impairment of her liberty interest in career opportunity by maintaining a policy and practice that permitted indicated findings under Allegation 60, an allegation that is void *ab inito*. Despite the fact that the Director knew or should have known that the policy applied to S.B.T. was void, the Director affirmed the indicated finding against her and authorized the Defendants named herein to act as complained of pursuant to the void policy.

99.    Defendant Tate in her official capacity is responsible at law for the violation of law perpetrated by the DCFS Director in his or her official capacity. The DCFS Director violated S.B.T.'s right to be free of the impairment of her liberty interest in career opportunity by

maintaining a policy and practice that permitted indicated findings solely because a parent is herself a victim of domestic violence. Despite the fact that the Director knew or should have known that the policy applied to S.B.T. was void, the Director affirmed the indicated finding against her and authorized the defendants named herein to act as complained of herein pursuant to the void policy.

**WHEREFORE,** S.B.T. requests this Court enter an order of judgment against Defendants providing the following relief:

a. A declaratory judgment pursuant to 28 U.S.C. § 2201, finding that the actions complained of herein violate S.B.T.'s constitutionally protected due process rights under the Fourteenth Amendment.

b. A declaratory judgment against Defendant Tate that her maintenance of policies authorizing an indicated finding against S.B.T. violated the Fourteenth Amendment to the United States Constitution;

c. Such other relief as this Court deems just and equitable.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, S.B.T. hereby demands a trial by jury.

Dated:  February 13, 2015

                                                 Respectfully submitted,

                                                 By:  /s/ Megan Thibert-Ind
                                                          One of their attorneys

| | |
|---|---|
| Megan Thibert-Ind (*pro hac vice*) | Diane L. Redleaf (*pro hac vice* pending) |
| J. Christian Nemeth (*pro hac vice*) | Family Defense Center |
| Rebecca A. Finkel (*pro hac vice*) | 70 East Lake Street, Suite 1100 |
| MCDERMOTT WILL & EMERY LLP | Chicago, Illinois 60601 |
| 227 West Monroe Street | Tel: 312-251-9800 |
| Chicago, Illinois 60606 | dianeredleaf@gmail.com |
| Tel: 312-372-2000 | |
| Fax: 312-984-7734 | |
| mthibert-ind@mwe.com | |
| jnemeth@mwe.com | |
| rfinkel@mwe.com | |

*Attorneys for Plaintiff*